**17-387UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BEVERLY TYE,

    Plaintiffs,

v.

CIGNA CORPORATION, et al.

    Defendants.

Case No. 1:17-cv-387

Black, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

This civil action is brought on behalf of Plaintiff Beverly Tye pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff seeks payment of life insurance death benefits in connection with the death of her husband Donald Tye. This matter is now before the Court on Defendant Connecticut General Life Insurance Company ("Defendant" or "CGLIC") and Defendant Cigna Corporation ("Cigna") motions for judgment on the Administrative Record (Docs. 12,13) and the parties' responsive memoranda. (Docs.19, 21). The pending motions have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. 28 U.S.C. § 636(b). (Doc. 3).

    **I.**    **Background and Facts**

    *A. Relevant Provisions of the Plan*

Plaintiff was a participant in an ERISA-governed welfare benefit plan, providing life insurance benefits, ("the Plan") offered by her employer, American Nursing Care, Inc. d.b.a. CHI Health at Home ("Employer"). The Plan provides benefits through a policy and

1

contract of insurance issued by CGLIC. (AR-696-744). According to the Plan, CGLIC pays death benefits if an insured employee, insured spouse, or other insured dependent dies. (AR-716).

The Plan provides a Guaranteed Issue Amount for employees in "the lesser of 3 times Annual Compensation or $250,000," but there is no Guaranteed Issue Amount for an Insured Spouse. (AR-710). The Plan explains that "Guaranteed Issue Amount" is "[t]he amount of coverage that an Insured may purchase without satisfying the Insurability Requirement." (AR-709). Because the Plan did not provide a Guaranteed Issue Amount of coverage for Mr. Tye, as a spouse, he was required to satisfy an Insurability Requirement to secure any life insurance coverage. (Id.). Even in situations where there is a Guaranteed Issue Amount for spousal coverage, the Plan provides that the Insurability Requirement must be satisfied unless "coverage for a Spouse is elected before or within 31 days after the date he becomes eligible . . ." (Id.).

The Plan affords CGLIC discretion in determining whether an individual to be insured is healthy enough to satisfy the Insurability Requirement. The Plan explains the requirement generally as follows:

> Insurability Requirement – The requirement that an eligible person submit evidence of good health acceptable to us in order to be insured. We may require that the eligible person provide such evidence at his own expense. Further, we may require different evidence of good health for different amounts of insurance.

(Id.) The Plan also provides the following additional language governing the Insurability Requirement as it applies to an Insured Spouse:

* * *

2

> If coverage for a Spouse is elected for an amount in excess of the Guaranteed Issue Amount, he will become insured for the amount that exceeds the Guaranteed Issue Amount on the date we agree in writing to insure him for that amount. We will require the Spouse to satisfy the Insurability Requirement before we agree to insure him for the higher amount. If coverage for a Spouse is elected more than 31 days after he becomes eligible, the Spouse will become insured on the date we agree in writing to insure him. We will require the Spouse to satisfy the Insurability Requirement before we agree to insure him for any amount.

The Plan provides that coverage may be contested for a period of two years following an initial determination of insurability:

> Incontestability – We will not contest the validity of this insurance after it has been in force for two years from the date of issue, except for nonpayment of premiums. No statement made by an Insured as to his insurability will be used to contest the validity of the insurance after it has been in force prior to the contest for a period of two years during the Insured's lifetime. No statement made by an Insured will be used unless it is made in writing and signed by him.

(AR-727)

### B. Plaintiff's Coverage

Plaintiff became eligible to elect insurance coverage under the Plan on March 28, 2014. (AR-030). She elected coverage more than 31 days later; however, by completing an application dated May 21, 2014.[1] (AR-035-36). Plaintiff applied for personal coverage in the amount of three times her annual salary and for spousal coverage in the amount of $40,000 on the life of Mr. Tye. (Id.). Both Plaintiff and Mr. Tye signed the application, agreeing to the following:

> To the best of my knowledge and belief, all information I provided is true and complete. … I understand that I am responsible to report to the insurance company any change in my health prior to my coverage effective

---

[1] Plaintiff argues that her application was "late" because her employer did not provide her the insurance packet in a timely manner. See AR 1.

3

> date, and that no coverage will be effective unless I meet the insurance company's underwriting requirements on the effective date.
>
> * * *
>
> Caution: Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act.

(Id.). The signatures agreeing to these conditions are found on the same page as the application's medical questionnaire. (Id.).

The medical questionnaire sought basic information relevant to satisfaction of the Insurability Requirement. Seven questions had to be answered "if applying for life insurance above the Guaranteed Coverage Amount," while four additional questions were required "if applying for life insurance more than 31 days after you are eligible . . ." (AR-036). Plaintiff and Mr. Tye answered "no" to all eleven questions with respect to his health, including:

> During the last five years has the proposed insured been diagnosed with or treated by/from a member of the medical profession for any of the conditions listed in questions below?
>
> * * *
>
> D. Any alcohol and/or drug addiction and/or substance abuse; mental, emotional or any other nervous disorders?
>
> E. Is there a current use of prescribed medications by the proposed insured?
>
> * * *
>
> G. Any Illness, injury, birth or congenital defect, disease or disorder not mentioned in questions A through F?

4

* * *

    H. Stroke, paralysis, epilepsy, fainting, headaches, seizures, dizziness or other disease disorder of the nervous system?

* * *

    J. Any surgical operation performed or been advised to have performed.

    K. Ever been in a hospital or sanitarium for rest, treatment, observation, or diagnosis, undergone any special examinations or laboratory tests such as x-rays, electrocardiograms, biopsies, blood or urine tests, or had any medical advice, examination, consultation, or treatment not mentioned in questions A through J?

(AR 36). Plaintiff and Mr. Tye answered "No" for each Question in the application relating to Mr Tye's health. (Id.).[2]

Relying on the answers provided by Plaintiff and Mr. Tye in the insurance application, CGLIC approved their application and Group Dependent Universal Life Insurance coverage was issued effective July 1, 2014. (AR-039).

*C. Plaintiff's Claim*

Plaintiff's husband died on May 3, 2015 due to "acute combined heroin, fentanyl, cocaine, and oxymorphone poisoning." (AR-629). Plaintiff submitted a claim for benefits thereafter. (AR-646). In a letter dated August 24, 2015, a claim services representative informed Plaintiff that her claim was being investigated, because Mr. Tye died less than two years after the effective date of the coverage. (AR-606). The letter requested "the complete names and addresses of all physicians and hospitals that treated Donnie Tye for the time period, July 1, 2009 through May 3, 2015" and a completed disclosure

---

[2] Questions H-K only need to be answered if the application is submitted more than 31 days after eligibility.

authorization form. (Id.). Plaintiff provided this information to CGLIC on September 20, 2105. (AR-599-603). On October 19, 2015, CGLIC determined that it would need to review five years of medical records because a December 29, 2014 record indicated "opioid long term use" for Mr. Tye. (AR-560). They had answered "no" to the application's question about use of prescription medication. (AR-036). On November 3, 2015, a review of additional records was performed. (AR-061). These included records showing: (a) on February 17, 2014 Mr. Tye "report[ed] that he uses illicit drugs (cocaine)" (AR-546); (b) on May 9, 2013 he was seen in the emergency room for "withdrawal from klonapin x 3 months – placed on ativan due to seizure after klonapin was stopped" (AR-478); and, (c) on May 1, 2011, he was treated in the emergency room for a "MVC [motor vehicle collision] rollover, unrestrained driver, intoxicated (Etoh + MJ) [alcohol and marijuana]" (AR-174). After citing these and other examples of medical treatment that should have been disclosed on the application, the reviewer explained:

> Mr. Tye did not disclose any medical history on his application form. If medical underwriting had known that Mr. Tye was involved in a motor vehicle accident involving alcohol and marijuana, was on multiple medications, seizure history, was using cocaine as of 2/17/2014 life insurance coverage would have been denied.
>
> My recommendation is to deny claim payment.

(AR-060-61).

The initial recommendation to deny the claim was considered and approved by two more reviewers at CGLIC on November 9, 2015. (AR-003).

In a letter dated November 10, 2015, CGLIC explained its decision to deny Plaintiff's claim. (AR-056-59). CGLIC wrote that had the underwriters responsible for making insurability determinations been notified that "Mr. Tye was involved in a motor

vehicle accident involving alcohol and marijuana, was on multiple medications, [had a] seizure history, [and] was using cocaine as of 2/17/2014, life insurance coverage would have been denied." (Id.). The CGLIC underwriting department further advised that:

> [i]f the applicant disclosed his medical history on the application, our Medical Underwriting guidelines would have led the underwriter to request medical records and base the review on the duration and tests performed. The file would have been declined based on the medical information provided in the claim records.

The letter advised Plaintiff of her right to appeal the denial of her claim. (AR-058-59).

Thereafter, on January 5, 2016, Plaintiff submitted an appeal letter. (AR-030). The letter argued that her application was submitted more than 31 days after she was eligible to elect coverage, because her employer failed to provide the information for insurance election at the time she became eligible. (Id.). She also argued that she was never notified that she must provide evidence of insurability for Mr. Tye to receive coverage. (Id.). Finally, Plaintiff argued that Mr. Tye "was never diagnosed or treated for any drug/alcohol addiction or abuse," making the response to Question D accurate. (Id.). Plaintiff made no argument regarding the false answers to other Questions, including E, G, H, and K. (Id.). After completing its review, CGLIC notified Plaintiff on April 28, 2017 that her appeal was denied. (AR-014-19). The letter identified the relevant Plan provisions regarding employee eligibility, Insured Spouse, and Incontestability, explaining their relevance to the false medical information provided on the application. (Id.). The letter also advised that "[Plaintiff] and Mr. Tye answered no to all of the questions regarding Mr. Tye's medical history." (AR-017). CGLIC found that despite the negative responses:

7

> The evidence supports that Mr. Tye had cervical spine surgery in 2011, knee surgery in 2012, and hand surgery in 2012. He had a motor vehicle accident in 2011. He had an electrocardiogram 05/08/2011. In 2013 he had a seizure and shortness of breath. On 02/03/2014 he had an MRI and X-ray. He was taking amitriptyline, docusate sodium, ferrous sulfate, gabapentin, lorazepam, oxycodone. Tizanidine, venlafaxine, cyclobenzaprine, docusate sodium, and ondansetron.

(AR-018). These were cited as examples of medical information contradicting the answers provided on the application. (Id.). CGLIC explained that its Medical Underwriting Department reviewed the medical records and concluded that, had they known Mr. Tye was hospitalized relative to a "motor vehicle accident involving alcohol and marijuana, was on multiple medications, had a seizure history, and was using cocaine as of 2/17/2014," the initial application for Group Universal Life Insurance would have been denied. (Id.). As such, Plaintiff's appeal was denied.

Thereafter, Plaintiff filed this lawsuit on May 3, 2017 in the Hamilton County Common Pleas Court seeking an award of life insurance benefits under the plain. (Doc. 1, Ex. A). The matter was removed to this Court on June 7, 2017. (Doc. 1). This matter is now before the Court on Defendants' motions for judgment. In this Court, Plaintiff argues that her application was timely because she submitted it within 31 days of receipt from her employer. Furthermore, Plaintiff argues that because her application was timely her husband was not required to answer the medical questions, despite the fact that he did so. Plaintiff essentially argues Defendant cannot now rely on information that her husband provided and attested to its truthfulness since he did not have to do so.

## II. Analysis

### A. Defendants' Motions for Judgment

CGLIC's motion for judgment on the administrative record asserts that its denial of coverage was rational under the deferential "arbitrary and capricious" standard of review. USBS argues that it thoroughly reviewed Plaintiff's claim and appeal having properly determined Mr. Tye's medical history was misrepresented and that CGLIC would not have agreed to insure him under the terms of the Plan if it had known his prior medical condition.

Plaintiff, however, contends that she and Mr. Tye were not required to answer medical questions on the application for insurance. Plaintiff further contends that the "No" responses they provided to each of the eleven answered questions about Mr. Tye's health were not untrue. As such, Plaintiff argues that the CGLIC improperly denied her claim for life insurance benefits.

Upon careful consideration of the administrative record and the arguments of counsel, the undersigned finds that Defendants' motion for judgment is well-taken.

### B. Standard of Review and Applicable Law

This Court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *McClain v. Eaton Corp. Disability Plan,* 740 F.3d 1059, 1063 (6th Cir. 2014) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, (1989)). If a plan affords such discretion to an administrator or fiduciary, the Court reviews the denial of benefits only to determine if it was arbitrary

and capricious. *Brown v. Federal Express Corp.*, 610 Fed.Appx. 498, 503 (6th Cir. 2015) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456 (6th Cir. 2003)).

Plaintiff does not dispute CGLIC's argument that this action is governed by ERISA or that its standards govern the Court's decision.

### C. Defendant CGLIC Reasonably Denied Plaintiff's Claim

As noted above, Plaintiff asserts that she and her husband were not required to complete the medical questionnaire because the application was completed within 31 days of she became eligible for coverage.

Notably, the Plan provides:

> If coverage for a Spouse is elected more than 31 days after he becomes eligible, the Spouse will become insured on the date we agree in writing to insure him. We will require the Spouse to satisfy the Insurability Requirement before we agree to insure him for any amount.

(AR-0714).

Here, Plaintiff became eligible to elect insurance coverage for herself and her spouse under the Plan on March 28, 2014. (AR-0030). Plaintiff became eligible on that date because it was her date of hire. (AR-0615, AR-0684, and AR-0713). Donald Tye became eligible to be insured as an Insured Spouse on the same day that Plaintiff became eligible. (AR-0713). Yet, the evidence of record indicates that Plaintiff and her spouse applied to elect coverage more than 31 days after March 28, 2014, completing the application on May 21, 2014. (AR-0035 to AR-0036).

Plaintiff contends, however, that it "has been determined to be the company's fault and the application was backdated to show that Mrs. Tye did timely complete the application." (Doc. 19 at 2). In this regard, Plaintiff, argues that "[f]ederal common law

10

rules of contract interpretation apply in construing an ERISA plan." *Caldwell v. PNC Fin. Servs. Group. Inc.*, 835 F. Supp. 2d 510, 522 (S.D. OH 2011); *quoting Perez v. Aetna Life Ins. Co.*, 150 F. 3d 550, 556 (6th Cir. App. 1998). "In developing federal common law rules of contract interpretation, courts take direction from both state law and general contract law principles." *Id.* In Ohio, "[t]he law of an insurance contract is not basically different from the law of any other kind of contract." *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427, 434 (1922). Notably, "[w]here there is substantial performance upon one side, there should be substantial performance upon the other side; and there is substantial performance upon one side when such performance does not result in any wrongful substantial injury to the other side." As such, Plaintiff contends that she and Mr. Tye substantially complied and performed under the contract. Namely, they filled out the application within 31 days and Mrs. Tye paid premiums for both her and Mr. Tye. Accordingly, Plaintiff contends that she substantially performed and Defendant should be required to do the same. Plaintiff's contentions are unsupported and unavailing.

Notably, when reviewing claims for denial of ERISA benefits district courts are typically limited to the existing administrative record whether the standard of review is abuse of discretion or *de novo. Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 615 (6th Cir.1998). Here, Plaintiff's assertion that her employer backdated her application is not supported by any record evidence. To the contrary, the administrative record indicates that the application was clearly dated on May 21, 2014, and that Plaintiff and Mr. Tye were identified as late enrollees. (AR-0615). The application was treated as late from the beginning, since the effective date for Donald Tye's life insurance was July 1, 2014. (AR-0061, AR-0066, and AR-0615). Moreover, Plaintiff did not request any

11

discovery outside the administrative record to support her contention that her employer backdated her application. Plaintiff's employer is not a party to this action Plaintiff has not put forth any evidence CGLIC had any fault in the timing of her application. As such, the record indicates that Plaintiff was required to complete the health questionnaire included in the application for benefits as outlined by the Plan documents.

But even assuming her application was timely, Mr. Tye was still required to answer medical questions A-G because he was seeking coverage above the Guaranteed Issue Amount, a number set at zero, for an insured spouse.

Plaintiff next contends that the answers she provided to the medical questions were not untrue. Plaintiff claims that "[t]he 'no' answers were given because [Mr. Tye] was not under any active treatment, nor was he 'currently' prescribed any medication." (Doc. 19, p. 1). Plaintiff further argues that that Mr. Tye "never received a diagnosis, disorder or any medical treatment for alcohol/drug addiction." *Id.* at 2. Plaintiff's contentions are unavailing.

As detailed above, the questions were not limited to "active treatment." Namely, the application, required, *inter alia,*

> During the last five years, has the proposed insured been diagnosed with, or treated by/from a member of the medical profession for any of the conditions listed in questions below?
>
> * * *
>
> G. Any illness, injury, birth or congenital defect, disease or disorder not mentioned in questions A through F?

(AR 36).

Here, despite the Plaintiff's negative responses the record indicates:

Mr. Tye had cervical spine surgery in 2011, knee surgery in 2012, and hand surgery in 2012. He had a motor vehicle accident in 2011. He had an electrocardiogram 05/08/2011. In 2013 he had a seizure and shortness of breath. On 02/03/2014 he had an MRI and X-ray. He was taking amitriptyline, docusate sodium, ferrous sulfate, gabapentin, lorazepam, oxycodone. Tizanidine, venlafaxine, cyclobenzaprine, docusate sodium, and ondansetron.

(AR-018).

The record further indicates that Mr. Tye unreported the 2011 "motor vehicle accident involv[ed] alcohol and marijuana." (AR-0018). Similarly, the 2013 seizure occurred in connection with withdrawal from Klonopin and was addressed when he suffered an acetaminophen overdose, after taking 50 oxycodone pills in less than five days. (AR-0478). Additionally, Mr. Tye admitted he "was using cocaine as of 2/17/2014," in follow up treatment after the 2/3/14 MRI and X-ray.

Moreover, at the time the application was completed in May 2017, a February 17, 2014 physician's visit was the most "current" treatment in the record. (AR-0542 to AR-0551). Mr. Tye's then current medications and available refills were as follows:

- amitriptyline (ELAVIL) 25 MG tablet
- docusate sodium (COLACE) 100 MG capsule
- ferrous sulfate 325 (65 FE) MG tablet
- gabapentin (NEURONTIN) 300 MG capsule
- LORazepam (ATIVAN) 1 MG tablet;
- oxyCODONE-acetaminophen (PERCOCET) 7.5-325 mg per tablet;
- tiZANidine (ZANAFLEX) 4 MG tablet
- venlafaxine (EFFEXOR-XR) 75 MG 24 hr capsule

(AR-0547).

Plaintiff and Mr. Tye however, indicated that he was not currently prescribed any medications. (AR-0036).

13

In light of the foregoing, the undersigned finds that CGLIC correctly found that Mr. Tye's medical history was misrepresented and that life insurance coverage would not have been approved, if they had known about Mr. Tye's "motor vehicle accident involving alcohol and marijuana, [that he] was on multiple medications, had a seizure history, and was using cocaine as of 2/17/2014 . . .". (AR-0018). As such, CGLIC's decision was "rational in light of the plan's provisions" and not arbitrary and capricious. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456-457 (6th Cir. 2003); *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998). Accordingly, CGLIC's motion for judgment on the administrative record is well-taken and should be granted.

### D. Defendant Cigna is entitled to Judgment as a matter of Law

Defendant Cigna argues that it was improperly named as a defendant and judgment must be granted in its favor as a matter of law because no claim may be made against it. For good cause shown and in the absence of any opposition, the undersigned agrees.

The proper party defendant in an ERISA action is the party that "is shown to control administration of a plan." *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.), cert. denied, 488 U.S. 826 (1988). Cigna Corporation had no role in the issuance of the insurance policy or the denial of Plaintiff's claim. The only proper defendant is CGLIC, which contracted with Plaintiff's employer American Nursing Care d/b/a CHI Health at Home to issue the policy under which she claims entitlement to benefits. (AR-744). *See Crawley-Kelsey v. The Hartford Ins. Co.*, Case No. 3-09-0698, 2010 WL 3521761 (M.D. Tenn. Sept. 7, 2010) (the insurer "Hartford Life and Accident Insurance Company" is the only proper defendant and claims against its parent and related entities are dismissed).

Accordingly, Cigna's motion for judgment as a matter of law should be granted.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED** that Defendant CGLIC and Defendant Cigna motions for judgment on the Administrative Record (Docs. 11, 12) be **GRANTED**; and this matter **TERMINATED** on the active docket of the Court.

    */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BEVERLY TYE.,

    Plaintiffs,

v.

CIGNA CORPORATION., et al

    Defendants.

Case No. 1:17-cv-387

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).